Good morning, Your Honors. Good morning. My name is George Rosenstock, and I represent the appellant in this case, BNI Enterprises, Inc. You can go ahead and be seated. Your Honors, during the next five days, in over 26 countries and nearly 10 languages, a total of 80,000 people are going to meet and exchange business worth almost $2 billion annually. They're doing it under the auspices of a networking system that is unique, that has been tweaked over 20 years, and just like an assembly line, we can all look at it now and say, oh, well, it's obvious, but it never was. And it is a unique system which was reduced to manuals and guidelines that have been copyrighted and appropriated by the defendant, literally, admittedly appropriated, and we are here only to protect that expression and nothing else. Counsel? I'm sorry, I'm sorry. You can certainly, she could steal your ideas, is that not correct? Absolutely, no monopoly on ideas. So all of these manuals are kind of factual, not really anything that seems unique? They're nonfiction. They're not factual. They're certainly different than the closed universe of rules in the Landsberg case, which the trial court relied on exclusively. When you enter the thought process of how am I going to create a networking organization, you're certainly in a broader open-ended universe than how can I write a manual to teach people how to play Scrabble, which is a closed universe. So it's not factual like a phone book. It's certainly not the kind of work we just listen to the eloquent arguments about, but it's something in between. With respect to this issue of inverse ratio and access, we have that going for the appellant and plaintiff here in spades. So you say it's nonfiction, but it's not factual. Yes, I think you can get caught up in the jargon here and lose concept, lose touch with concepts that are somewhat elusive. There's obviously a difference between a phone book and a biography, and you could loosely say they're both factual, but they're obviously totally different concepts and I would suggest should be examined with a totally different mindset. In this particular case, access was not only conceded, it's especially underscored given that the respondent was employed by B&I for ten years and was intimately familiar with the material. The inverse ratio rule therefore clearly applies. If it exists at all, it has a very significant impact in such a case as this. And to get back to your honest question about limited ways of expression, the fact is when you appropriate the works of another and you literally copy them verbatim, that's copyright violation if the ideas are protectable and there's some minimal amount of creativity involved. You just can't compare Landsberg, a closed universe of rules, to how am I going to formulate a networking organization, despite how obvious relationship marketing may look now. We're looking at a system that is fine-tuned as a very fine engine. When they evaluate how each chapter is going on every six weeks, there are 30 factors that they look at to make sure that chapter continues to operate. And the respondent's evaluation of chapter uses 26 of those 30. That's no accident. It's literal and at her deposition she literally admits she copies it. I use the ideas. And the issue then really boils down to substantial similarity in this context, and it's not a phone book and it's not fiction, obviously. And what was the trial court looking at as evidence? They had one declaration, which she color-coded, and she literally admitted by not color-coding great swaths of text that it was verbatim copying. There's no other inference. She says if it's blue, he had it. If it's pink, I had it. And if it's blank, we both had it. Now, how can you look at this record, see swaths of blank, which constitute admissions that they're identical, and suggest that there has not been verbatim copying? I don't think there's any other. Your work is basically a work on how to do something better? Yes, absolutely. It is utilitarian. What about an illustration on how to perfect a golf swing so the ball goes farther and straighter? Is that protectable? I will not answer that question absent seeing a particular expression in law. It's identical. Identical? Yeah. In one case, it's a 40-year-old man. In the other case, it's a 41-year-old man. Well, if that's the only difference and the diagrams are identical? Yeah. How to hit a golf ball better? You say your case is a case of how to do business better. And you said, yes, that's it. Now, I'm asking you, is that protectable in all instances? Not in all instances. I would argue in a given context, I could come up with a hypothetical in which it would be protectable. Absolutely. For example, let's go to the diagram in this case, which is essentially the second half of the argument. When you have relationship marketing, which is confessively an idea, not an expression of it. How to market better? But let me get to the expression part of my argument, if I might. Yeah. How to market better is an idea. Marketing better is an idea. Meeting people and shaking hands is an idea. Now, how if you want to? Well, your context spheres is something that you seem to rely on. Yes, we do. If you want to now express that idea in a picture, and diagrams, as Your Honors well know, are fully protected by the copyright laws and require a minimal degree of creativity, we have the context spheres, which pictorially represent the idea. Now, that's an expression. You can't say that's a form, and you can't say that's a phrase. It doesn't seem, yeah, artistic to me. It isn't. No question. It's not artistic. It doesn't have an artistic aspect to it. And what does she call that? Same thing. What does she call the same thing? What you call context spheres, she calls? Power partners, or power team versus power partners. But if we get down to the nuts and bolts of what you're looking at pictorially, you see in the center an emboldened, overarching profession. You see the satellite professions, and you see them in close. Oh, well, it may be a simplistic expression, but it's an expression. If you have a minimal degree of creativity required, if you have the inverse ratio applying, ratchet it up to its maximum, given her access, how can you say that a reasonable jury would not have found substantial similarity? You simply can't. As Judge Ferguson mentioned previously, I think the judge trampled on the juror's province by simply walking in and saying, well, I don't think that diagram is substantially similar. You can't possibly. It grates against common sense to suggest that there's no genuine issue of material fact when you compare those two diagrams. There's no rule of law that would slice out that inquiry from the trial jury's province, and we would suggest there that the trial court, in its wisdom, overstepped its bounds. We suggest, therefore, that having thin protection does not mean you have no protection, that there has been admissions in the declaration supporting summary judgment that there was verbatim copying by the blank sections there. We would suggest that one of the one of the one of the I think the only case relied upon by the trial court was the Landsberg case, which deals with utilitarian, how do I do a golf swing kind of stuff, with a limited universe of possibilities. And he used that case in support of his ruling on the diagram. And that's a disconnect, because the diagram by definition is not words, and it was certainly not a closed universe of ideas. It's an open universe of expressing confessively what might be a simple idea. But the fact is, as I said in my opening, going a little bit off the record, it's unique for an organization to have 80,000 people globally doing something that's right and generating that kind of business. It's no accident. I'm sorry, Your Honor. I thought Your Honor was going to ask a question. Yes. This sounds kind of like the Kiwanis Club. Has the Kiwanis Club sued both of you? It sounds like the Kiwanis Club. What was the last question? I'm sorry. Has anyone suggested that the Kiwanis Club's rights have been violated here? The Kiwanis Club does not evaluate its chapters every six weeks by 30 different factors. The Kiwanis Club does not have a meeting agenda, which according to the defendant's sworn testimony is mirrored by team. The Kiwanis Clubs of America are not in 27 countries, generating $2 billion of business in a kind of human internet. The kind of success and tweaking of what may appear obvious, such as an assembly line, has been honed and tweaked over 20 years such that it is now unique. And it's very easy to breeze over that because, oh, well, everybody shakes hands and does business. But not this way, and it has never been cultivated this successfully. It's still expanding explosively. And this Respondent has come in and said, yeah, I use the idea, but, yeah, they're not protectable because everybody does it. And I don't think that flies when you look at this record carefully. I will reserve the remaining ten minutes unless there are some questions at this time. Thank you for your argument. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, and I'll try to make this brief. I believe the district court All right, you need to start putting your name on the record. I'm sorry, Kelly Holmes, and I'm the owner of Team Referral Network. All right, and you're representing yourself, correct? I am per se, yes. I believe the district court You're brave. Excuse me? I said you're brave. Thank you, Your Honor. I'm not feeling real brave right now, maybe in a little while. I believe the district court and the Honorable Judge Otero correctly ruled in this case. I did not copy B&I's materials. I did not admit in any depositions that I copied those materials. The only admission is that we shared similar techniques and procedures, and for that I've just finished up a two-week state court case that they sued me for for breach of contract of use of their techniques and procedures and won. I believe we're here today because of one man's vengeance, the owner of B&I, not because putting circles around words somehow should grant some additional copyright protection under federal law that they're asking you to change. I left working for B&I in 1999 and sued them for breach of contract for failure to franchise, a promise that had been made to me for ten years. I won in that case, and almost three years after leaving B&I, I started my own networking organization. After that, I created all of Team's materials almost three years after I left B&I as well. In between that time, I had gone on to work in other industries. I researched the referral networking industry extensively before starting Team Referral Network and creating Team's materials. After being in business for over one year, I was sued under this case that is in the lower court for federal copyright infringement. Did your employment contract cover anything that you may do after you leave the employment? Yes, it did, Your Honor. It had a non-compete covenant for one year, and it had a non-use of techniques and procedures as well, which is what we went to state court on here just very recently, and that I won. Those issues aren't going to be decided by the state court, you say? They have already been decided by the state court, Your Honor, and I won. I was shown not to have violated any kind of employment contract by any use of techniques or procedures of B&I's. Where were those cases heard? It is case number BC319348, and that was here in Superior Court in Los Angeles, and it was the Honorable Aurelio Munoz who presided. Was there an appeal? There has been an appeal filed. What? There has been an appeal filed. You just recently prevailed in the lower court, correct? Yes. You said two weeks ago? It was a two-week trial, and it was a couple of months ago. Okay. After being in business for a year, I was sued for the copyright infringement and won on summary judgment. Shortly thereafter, they filed the breach of contract case in state court, of which we did the two-week trial, against Mr. Rosenstock and Morrison and Forrester, four attorneys as well, and that is the case that I was referring to in one. If we were to take a look at NMR on copyright, NMR states that if substantial similarity is the normal measure required to demonstrate infringement, super substantial similarity must pertain when dealing with thin works. I don't believe that putting circles around words, very common verbiage, would say that anything is creative. In line with that approach, the Ninth Circus has held that when the rights are held. So you're talking, that was the spheres that you're talking. The spheres of influence, which just to educate the court if they want, the spheres of influence came from a book authored by Ivan Meisner, the founder of BNI, that had to do with a way of marketing your business. In TEAMS materials, it only has to do with representing a chapter of TEAM referral network. In other words, what an individual chapter of Kiwanis would look like, the people that are involved, or a chapter of TEAM referral network would look like for the members that would be involved. And that is your basic industry standard, a real estate agent, a mortgage lender, a financial planner, people who are in small business and are in business for themselves who would like to generate this type of referral marketing for their business. NMR goes on to state that in this approach, the Ninth Circuit has held when the range of protectable and unauthorized expression is narrow, as it is in this case, the appropriate standard for illicit copying is virtual identity. I believe that Landsberg was correctly cited in the use of this case to grant only thin protection over these factual nonfiction materials, but I also believe that these materials held up to the light of day when you read them, do not look virtually identical, or as Judge Otero found, not even substantially similar, other than when otherwise unavoidably similar for the nature of the business. If you are McDonald's and Burger King, you're talking about fast food and hamburgers and cheeseburgers and french fries, and there's only a limited number of ways to express those ideas and information. I believe that Judge Otero was correct in his ruling on this case, and I hope that this Court will find that as well. Is there any other questions? There don't appear to be. Thank you for your argument. Thank you. If I may, Your Honors, just briefly, the lower court did not find the technique – I'm sorry, the State court in the unrelated matter, which is on appeal, which is in fact legally irrelevant, requires some illumination so that the air is cleared on that issue. The State court found that there was no trade secret, that what B&I has been doing for 20 years is now out there to some extent. That is a completely irrelevant issue to whether or not she has been using the techniques and procedures. What's more, whether you use the techniques and procedures has nothing to do with whether you're violating a copyright. So the issue, no one has ever suggested that before you can copyright something, it has to be a trade secret, and that's all the State court found. I would ask the court once again to look at the Inverse Ratio Rule, look at the procedural posture of this as a motion for summary judgment, note that all we want is our day in court, and when you examine the declarations, you have to reach the conclusion that there's an admission of verbatim copying. You have to reach a conclusion that there is a reasonable jury out there that could find substantial similarities between the diagrams. I don't feel, to address Judge Callahan's concern with respect to artistry, that when you talk about how a phone book is arranged, you're not talking about artistry. If you want to fall back on the jargon of factual versus fiction, versus something that's in the creative realm and not the nonfiction realm, I don't think we're looking for an artistic suggestion that we have art here. We're suggesting that we have minimal creativity in a protectable diagram, and we're not suggesting that we're monopolizing the idea. However, given her ten years of access, given when you look through these declarations carefully, you'll see that she evaluates complaints from members with the same six factors that B&I uses. It's very easy to forget that this very obvious concept, like an assembly line or relationship marketing, can in fact be turned into a science, can be put into manuals, and then can be appropriated and stolen. And that is what we're suggesting happened in this case. One final note. The manner of arrangement of Teem's works compared to B&I's, whether or not you suggest that Kiwanis may have some large items in their landscape that look like ours, is literally cloned. And I know Your Honors have read the record thoroughly, but to underscore a few things here, if you look at, for example, administrative policies in Exhibit 2 in support of the motion for summary judgment, there are whole swaths of texts that she admits have been duplicated. Program guidelines for the six guidelines for visiting chapters are identical. And when you start focusing, and for 20 years focus on how to network, it becomes very material. Shall I let a member of one chapter visit another and potentially upset the breakdown of categories of professions? When you start giving that thought and have specific rules and express them, that's a copyrightable expression. That's not saying let's have a Kiwanis group and have everyone show up, shake hands, and maybe get a business card. When you look at Exhibit 6, five out of the six criteria for declining members are identical. When you look at options for handling complaints, identical. And that was the area which before the trial court was her specialty at B&I. I just don't feel that copyright law can have the teeth that it needs if this kind of appropriation of someone's ideas with minimal creativity, I grant you, in the utilitarian concept can be thrown out of court without our getting our day in court. I think that if we had our day in court, the jurors would be out a considerable period of time. Thank you very much. All right. Thank you for your argument. This matter will stand submitted. The court's just going to take a brief recess of five minutes, so we'll be back out in five minutes. Thank you.
judges: B. Fletcher, Ferguson, Callahan